IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JASMINE T.,[1] <br>     o.b.o. T.T. <br><br>     Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br>     Defendant. | CIVIL ACTION <br><br> No. 19-1088-JWL |

**MEMORANDUM AND ORDER**

Plaintiff, on behalf of her minor son, T.T. (hereinafter Claimant) seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to section 1614(a) of the Social Security Act, 42 U.S.C. § 1382c(a) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

An application for SSI was filed for Plaintiff's minor son on December 17, 2015. (R. 15, 223). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff argues that the ALJ erroneously concluded that her son has "less than marked limitations" in the functional equivalence domain of caring for yourself and only a "marked limitation" in the domain of health and physical well-being. (Pl. Br. 7-10). She also argues that the ALJ erred in discounting Plaintiff's and Claimant's allegations of disabling symptoms. Id. 10-12.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner has promulgated regulations which establish a three-step sequential evaluation process to evaluate a child disability case. 20 C.F.R. § 416.924; see also, Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1237-38 (10th Cir. 2001). In the first step, if the child is engaging in substantial gainful activity, a finding of nondisability is made and the claim is denied. Id. § 416.924(b). If not, the Commissioner continues with the second step to determine whether the child has a medically determinable impairment or combination of impairments which is severe. Id. § 416.924(c). If the

child has a severe impairment, the Commissioner continues with the third and final step, and determines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. Id. § 416.924(d).

An impairment meets a listing if it meets all the medical criteria contained in a particular listing. Id. § 416.925. An impairment is medically equivalent to a listing if, without considering age, education, or work experience, it is at least equal in severity and duration to the criteria in the listing. Id. § 416.926. To be functionally equivalent, the impairment must result in limitations that functionally equal a listing. Id. § 416.926a. In other words, "it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Id. § 416.926a; see also, Briggs, 248 F.3d at 1238. The child's impairment must also meet the duration requirement--lasting or expected to last twelve months--before the child can be found disabled. Id. §§ 416.906, 416.924(d)(1); Davenport v. Apfel, 151 F. Supp. 2d 1270, 1272 (D. Kan. 2001).

To determine functional equivalence, the Commissioner must analyze six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. Id. § 416,926a(b)(1)(i-vi); see also Briggs, 248 F.3d at 1238 (recognizing the six domains).

In evaluating a child claimant's ability to function in each domain, the Commissioner will seek information to answer the following questions about whether the claimant's activities are typical of other children the claimant's age who do not have impairments: (1) What activities can the claimant perform? (2) What activities is the claimant unable to perform? (3) Which of the claimant's activities are limited or restricted compared to other children the claimant's age who do not have impairments? (4) Where does the claimant have difficulty with his/her activities--at home, in child care, at school, or in the community? (5) Does the claimant have difficulty independently initiating, sustaining, or completing activities? (6) What kind of help does the claimant need to do his/her activities, how much help is needed, and how often is the help needed? Id. § 416.926a(b)(2)(i)-(vi).

Functional equivalence will be found only if a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. Id. § 416.926a(a). A "marked" limitation is "a limitation that is more than moderate but less than extreme." Id. To constitute a "marked" limitation, the claimant's impairment must interfere seriously with his ability to independently initiate, sustain or complete activities. Id. § 416.926a(e)(2)(i). This may mean serious limitation exists in only one activity, or in several activities. Id.

"Extreme" is the rating given the worst limitations and occurs when a claimant's impairment interferes _very_ seriously with his or her ability to independently initiate, sustain, or complete activities. Id. § 416.926a(e)(3)(i). An "extreme" limitation does not

necessarily mean a total lack or loss of ability to function but is more than "marked." Id.; see also, Briggs, 248 F.3d 1238, n.1 (stating definition of "functional equivalency," and "marked" and "extreme" limitations).

In her Brief, Plaintiff addresses alleged errors in the ALJ's evaluation of the functional domains before she addresses alleged errors in his evaluation of Plaintiff's and Claimant's allegations of disabling symptoms. Because the evaluation of symptoms informs and is intertwined with the evaluation of the functional domains, the court chooses to address the issue of allegations of symptoms first.

## II. Evaluation of Allegations of Disabling Symptoms

Plaintiff claims that in making a determination regarding the allegations of symptoms the ALJ relied upon only two factors, her observation of Claimant at the hearing and consideration of the reports of school teachers and specialists, and that these factors are insufficient as a matter of law. (Pl. Br. 11). She argues this is so because the SSA uses a "whole child" analytic framework, and the teachers and specialists did not observe Claimant outside school, id., and because the two factors ignore objective medical evidence that supports the allegations of symptoms.[2] Id. at 11-12.

The Commissioner argues the ALJ reasonably evaluated the allegations of symptoms. (Comm'r Br. 7). He argues that the ALJ considered more than just the two

---

[2] Plaintiff argues the ALJ's analysis is "insufficient and … not supported by substantial evidence for at least three reasons." (Pl. Br. 11). Plaintiff numbered her reasons and presented only the two discussed above. Id. at 11-12 ("First," "Second"). The court is unable to ascertain Plaintiff's third reason.

consistency factors enumerated by Plaintiff, "the ALJ also considered: Dr. Nimmagadda's testimony; Dr. Paik's treatment notes; treatment records from Lurie Children's Hospital; records from emergency room physicians and physician assistants; and assessments in individual education plans (IEPs) and 504 plans." (Comm'r Br. 7) (citing R. 21-22; Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009); Scott v. Berryhill, 695 F. App'x 399, 404-05 (10th Cir. 2017)). The Commissioner argues the evidence Plaintiff cites in her argument does not support her claim. Id. at 8. And he argues that even if the evidence cited supported Plaintiff's claim, the ALJ's conclusion is reasonable and also supported by the evidence, the ALJ is required to resolve evidentiary conflicts, and the court must affirm the ALJ's decision in such circumstances. Id. at 9 (citing Allman v. Colvin, 813 F.3d 1326, 1333 (10th Cir. 2016); Lax, 489 F.3d at 1084; Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007)).

In her Reply Brief, Plaintiff argues the Commissioner misunderstands her argument, and that in any case "none of the evidence cited by the Government or mentioned by the ALJ speaks to [Claimant]'s behavior at home" and cannot justify the ALJ's "failure to discuss [Plaintiff's] testimony regarding [Claimant]'s limitations in bathing, grooming, dressing, or sleeping." (Reply 7).

### A. **Standard for Evaluating Allegations of Symptoms**

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

7

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting, 987 F.2d at 1489).[3]

---

[3] Luna, Thompson, Kepler, and other cases cited below were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5882 (Jan. 18, 2017) (codified at 20 C.F.R. § 416.929). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on August 15, 2018, when this case was decided. Nonetheless, to the extent that "subjective measures of credibility that are peculiarly  **… continued …**

8

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the courts:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 416.929(c)(3)(i-vii).

An ALJ's evaluation of a claimant's allegations of symptoms is generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

**B.    The ALJ's Analysis**

The ALJ applied the three-step sequential evaluation process for evaluating childhood disability and determined at step one that Claimant has not engaged in

---

within the judgment of the ALJ" relate to an examination of a claimant's character, it is specifically prohibited by Soc. Sec. Ruling (SSR) 16-3p and is no longer a valid factor.

substantial gainful activity during the relevant time, at step two that he has a combination of impairments which are "severe" within the meaning of the Act, and at step three that Claimant's impairments do not meet or medically equal the severity of any impairment in the Listing of Impairments. (R. 18-19) (findings 2, 3, and 4). Plaintiff does not allege error in these findings except perhaps as such an error may relate to the ALJ's evaluation of the allegations of symptoms or evaluation of the two functional domains at issue.

>Thereafter, the ALJ stated the evidence she considered:
>
>Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, the undersigned has considered all of the relevant evidence in the case record. "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).

Id. at 19-20.

The ALJ explained how she applied the SSA's "whole child" analytic framework, and how she considered "all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence." Id. at 20 (citing 20 C.F.R. §§ 416.926a(b & c), 416.929; and SSR 09-1p and SSR 16-3p). Then, the ALJ explained the standard for evaluating the claimant's symptoms and summarized the symptoms alleged by Claimant and Plaintiff (his mother). (R. 20-21). The ALJ stated her finding regarding the allegations of symptoms:

>After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be

10

> expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record. For example, the undersigned observed in the claimant [sic] to fidget during his testimony, but that he was friendly and very articulate. He paid attention to questions and answered them fully and in detail. He was able to explain his coping strategies for headaches and pain and knew all of his medications. In addition, none of the teacher evaluations found any severe or very severe problems in any of the 6 functional domains applicable to children. Although several concluded he needed support or redirection, was distracted or had attention issues and had difficulty completing work, none of the 5 teachers or specialists suggested there was a marked functional limitation in any domain. None of his limitations were more than mild or obvious. This suggests an exaggeration of symptomatology and alleged limitations.

Id. at 21.

The ALJ accorded great weight to the opinion of Dr. Nimmagadda, the medical expert who testified at the hearing, but only some weight to the treating source opinion of Dr. Paik. Id. She found the consulting examiner's observations "consistent with the longitudinal treatment record from the Lurie Children's Hospital and emergency room physicians and physician assistants' notes," and found the Individual Education Plans (IEP) and 504 plans "merit consideration consistent with the assessments by the claimant's 2nd, 3rd and 4th grade teachers and specialists." Id. at 22. The ALJ "relied on the teacher assessments, IEP/504 plans and assessments and Dr. Nimmagadda's expert testimony" in evaluating the six functional domains. (R. 22) (citations omitted).

## C.   Analysis

As Plaintiff suggests, the ALJ found the allegations of symptoms by Plaintiff and Claimant are not consistent with the evidence in the record, and provided two examples

11

of such inconsistencies—Claimant's competent testimony and the school personnel's relatively positive evaluation of Claimant, suggesting only mild or obvious limitations. (R. 21). But that does not suggest, as Plaintiff concludes, that the ALJ's analysis is insufficient as a matter of law.

The fact the school personnel did not observe Plaintiff outside of school does not compel the conclusion the ALJ did not apply the SSA's "whole child" analytic framework. As noted above, the ALJ explained the framework and stated that she applied it in the evaluation of functional equivalence. Moreover, as the Commissioner's Brief suggests the ALJ's decision reveals she considered all the evidence including evidence and testimony presented by Claimant's mother and the medical evidence. While school personnel, so far as the record reveals, were ignorant of Claimant's difficulties at home, the ALJ reviewed the record evidence, heard Claimant's and his mother's testimony and summarized that testimony including a summary of his difficulties at home. Indeed, the ALJ reported considering all the evidence of record and Plaintiff does not argue that there was some evidence which the ALJ failed to get.

Plaintiff argues that factors relied on by the ALJ to discount the allegations of symptoms ignored objective medical evidence that supports those allegations. While it is correct that the two examples of inconsistencies included in the ALJ's decision do not account for the objective medical evidence, it is not correct to infer therefrom that the medical evidence was ignored in evaluating the allegations of symptoms. The ALJ stated the medical evidence had been considered, summarized the medical evidence, and

12

explained the weight she accorded the medical opinions. Plaintiff acknowledges that the court's consideration of an ALJ's evaluation of symptoms is deferential and that "an ALJ is not required to perform a 'formalistic factor-by-factor recitation of the evidence.'" (Pl. Br. 10) (quoting Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)). However, she asks the court to reject this ALJ's finding without showing a relevant factor that was actually ignored or evidence that compels a different finding. Plaintiff has shown no error in the ALJ's evaluation of the subjective allegations of symptoms.

## III. Caring for Yourself

Plaintiff claims the ALJ's conclusion that Claimant has a less than marked limitation in the domain of caring for yourself is not supported by substantial evidence because Plaintiff testified that Claimant struggles with bathing and grooming, struggles to dress himself without help, is oblivious to danger, can't sleep without his mother, and throws tantrums when he does not get his way. (Pl. Br. 7-8). Plaintiff argues, "This evidence, especially in combination with the evidence of 'mild' limitation noted by the ALJ, supports a finding that" Claimant has a marked limitation in the domain of caring for yourself, and remand is necessary because the ALJ ignored this evidence. Id. at 8 (citing Briggs ex rel. Briggs, 248 F.3d at 1239; Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996)) (an ALJ may not ignore significantly probative evidence).

The Commissioner argues the ALJ's finding in this domain is supported by the evidence. He argues the ALJ based his finding on the teacher questionnaires which suggested no limitation in this domain but that the ALJ recognized Claimant had more

13

difficulty treating his migraine headaches than accounted for by the teachers and found that Claimant has greater, but still less than marked, limitations in this domain. (Comm'r Br. 4-5).

In her Reply Brief, Plaintiff argues that her testimony that Claimant struggles with bathing and grooming, struggles to dress himself without help, is oblivious to danger, can't sleep without his mother, and throws tantrums when he does not get his way is evidence which "is both 'uncontroverted' and 'significantly probative'; yet, the ALJ failed to even mention it, let alone analyze or address it." (Reply 2). She argues this is error which is not harmless and requires remand. Id. at 2-4.

The court finds no error in this regard. In section II of this opinion, the court recognized the ALJ's evaluation of Plaintiff's and Claimant's allegations of disabling symptoms, and her summaries of their testimonies and of the evidence, and her evaluation of the medical opinions. It noted the ALJ's explanation of what she had relied on in evaluating the functional domains. The court will not repeat that discussion here.

In light of the ALJ's specific discussion and summary of Plaintiff's testimony, Plaintiff's assertion that "the ALJ failed to even mention it, let alone analyze or address it," fails. In that light, Plaintiff's argument is merely a claim that the ALJ failed in her decision adequately to articulate each specific, individual statement of Plaintiff. As the Commissioner points out an ALJ is not required to discuss every piece of evidence. Wall, 561 F.3d at 1067. However, as Plaintiff points out the decision is only "adequate if it discusses the 'uncontroverted evidence' the ALJ chooses not to rely upon and any

14

'significantly probative evidence' the ALJ decides to reject." Id.; see also, Clifton, 79 F.3d at 1009-10.

Plaintiff argues that the testimony at issue here "is both 'uncontroverted' and 'significantly probative'" and therefore each assertion should have been stated and discussed. The court does not agree. The ALJ specifically summarized and discussed Plaintiff's testimony and as the court explained above properly discounted it because she found it inconsistent with other evidence in the record. Thus, the evidence was not uncontroverted. Moreover, the ALJ explained "that a child has a 'marked limitation' in a domain when his impairment(s) 'interferes seriously' with the ability to independently initiate, sustain, or complete activities" (R. 16), and is "[t]he equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." Id. at 17. She explained that a school age child as defined in the regulations is "a child age 6 to the attainment of age 12." Id. at 22. She explained that in the domain of caring for yourself:

> a school-age child without an impairment should be independent in most day-to-day activities (e.g., dressing and bathing), although he may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he is competent in doing some activities but has difficulty doing others. The child should be able to identify those circumstances when he feels good about himself and when he feels bad. The child should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. The child should also begin to demonstrate consistent control over his behavior, and be able to avoid behaviors that are unsafe or otherwise not good for him. At this age, the child should begin imitating more of the behavior of adults he knows.

(R. 25). The court notes that the language used in describing the functioning of a school-aged child <u>without an impairment</u> reflects a continuum of functioning and contains many qualifications on those functioning activities, and what such a child should "begin" to do. It should also be noted that Claimant was eight-years-old at the beginning of the relevant period here and nine-years-old at the hearing. Thus, Claimant's functioning was compared to the first half or so of the continuum of school-aged-children without an impairment, and Claimant admittedly has impairments.

Keeping these facts and considerations in mind, Plaintiff has not shown that a nine-year-old, school-aged child who "struggles with bathing and grooming, struggles to dress himself without help, is oblivious to danger, can't sleep without his mother, and throws tantrums when he does not get his way," are facts which compel a finding of functioning the equivalent of at least two standard deviations below the mean functioning of a nine-year-old without an impairment. Plaintiff has not shown that her individual statements of limitations are "significantly probative," and therefore worthy of separate, specific discussion in the circumstances of this case.

## IV. Health and Physical Well-Being

Plaintiff implies[4] that the ALJ should have found an extreme limitation in the domain of health and physical well-being. She points out that ""[a]n impairment can be

---

[4] In her Reply Brief Plaintiff argues that the ALJ failed to explain why the evidence does not support an extreme limitation in this domain (Reply 5) but once again does not specifically argue the evidence compels such a finding.

16

characterized as extreme [in] this domain if the impairment causes episodes of illness in excess of that required for a marked impairment." (Pl. Br. 9) (quoting Morris ex rel. Feth v. Barnhart, 326 F. Supp. 2d 1203, 1212 (D. Kan. 2004) (citing 20 C.F.R. § 416.926a(e)(3)(iv)). She argues, "The ALJ failed to acknowledge or even consider whether the alarming frequency of [Plaintiff]'s headaches is 'substantially in excess of the [frequency] requirements for showing a 'marked' limitation' in this domain." Id. at 9-10 (quoting 20 C.F.R. § 416.926a(e)(3)(iv)).

The Commissioner argues that the evidence supports the ALJ's finding of a marked limitation in this domain. He argues "Plaintiff fails to show that the ALJ was required to explicitly state that she considered whether these headaches rose to the level of an extreme limitation, but then ultimately determined they did not." (Comm'r Br. 6). He argues, "In the absence of any authority actually supporting her argument, Plaintiff is merely suggesting that the record could be read a different way." Id. at 7.

Plaintiff replies that ALJs "must give good reasons for their findings, reasons that are sufficiently specific to allow for meaningful review." (Reply 5) (quoting Eckert v. Berryhill, No. 16-cv-0390 SMV, 2017 WL 3447130, at *4 (D.N.M. Aug. 10, 2017)).[5] She argues that the requirement for the ALJ to explicitly state that she has considered whether a limitation is extreme where she has found it is marked is derived from 20 C.F.R. § 416.926a(e) "providing that SSA will 'decide whether you have a 'marked' or

---

[5] Although Plaintiff's Brief attributes Eckert to the District of Kansas, it is an opinion of the District of New Mexico.

17

an 'extreme' limitation…'" (Reply 5). Finally, she argues that neither the Commissioner nor the ALJ explained why the evidence does not establish an extreme limitation. Id.

As noted above, the ALJ stated the legal standard applicable to her determination of functional equivalency. She stated she had "considered all of the relevant evidence in the case record," and she explained what that evidence consists of. (R. 19-20). When assessing the domain of health and physical well-being, the ALJ explained the regulation applicable to her consideration of that domain. Id. at 26 (citing 20 C.F.R. § 416.926a(l)(3)). She explained her finding that Claimant has a marked limitation in this domain and explained the bases for her finding. Id. More is not required.

Plaintiff is correct that it is the ALJ's responsibility to decide whether Claimant has a marked or an extreme limitation in the six domains. But as the Commissioner points out Plaintiff has cited no authority that after finding a marked limitation an ALJ must explain why the evidence does not require finding an extreme limitation, and the court is aware of none. The regulation Plaintiff asserts the requirement is "derived from" merely defines marked and extreme limitations and in its preliminary, general discussion it states that when the agency

> decide[s] whether you have a "marked" or an "extreme" limitation, we will consider your functional limitations resulting from all of your impairments, including their interactive and cumulative effects. We will consider all the relevant information in your case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the descriptions we have about your functioning from your parents, teachers, and other people who know you, and the relevant factors explained in §§ 416.924a, 416.924b, and 416.929.

20 C.F.R. § 416.926a(e)(1)(i). The regulation cited by Plaintiff also states particular considerations for the domain of health and physical well-being, but even there it does not require an explanation why an extreme limitation is not required if a marked limitation is found. Compare 20 C.F.R. § 416.926a(e)(2)(iv), with 20 C.F.R. § 416.926a(e)(3)(iv). It provides that a marked limitation may be found if a claimant has episodes or exacerbations which are more frequent and of lesser duration, or are less frequent with greater duration "if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity." 20 C.F.R. § 416.926a(e)(2)(iv). The regulation explains that the agency may find an extreme limitation

> if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation in paragraph (e)(2)(iv) of this section. However, if you have episodes of illness or exacerbations of your impairment(s) that we would rate as "extreme" under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases. See §§ 416.925 and 416.926.

20 C.F.R. § 416.926a(e)(3)(iv). As quoted above in order to find an extreme limitation in this domain, Plaintiff must show symptoms or signs "substantially in excess of the requirements for showing a 'marked' limitation," and if an extreme limitation is found, in most cases "under this definition, your impairment(s) should meet or medically equal the requirements of a listing." 20 C.F.R. § 416.926a(e)(3)(iv).

Plaintiff's arguments appear to focus on her belief that the ALJ could have afforded greater weight to the evidence suggesting disability, but she has not shown that the evidence compels that determination. Plaintiff must demonstrate the error in the

19

ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). In any case, the ALJ explained her determination and the court can follow her reasoning. It is Plaintiff's burden to prove her minor son is disabled, not the Commissioner's burden to prove otherwise. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) ("It is beyond dispute that the burden to prove disability in a social security case is on the claimant.").

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 6, 2020, at Kansas City, Kansas.

s:/John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**